IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MICROSOFT CORPORATION,

        Plaintiff,

  v.                                C.A. No. 09-484-JJF

WEBXCHANGE INC.,

        Defendant.

---

Derrick W. Toddy, Esquire; Klaus H. Hamm, Esquire; John D. Vandenberg, Esquire; Garth A. Winn, Esquire of KLARQUIST SPARKMAN, LLP, Portland, Oregon.
Steven J. Balick, Esquire; John G. Day, Esquire; and Lauren E. Maguire, Esquire of ASHBY & GEDDES, Wilmington, Delaware.

Attorneys for Plaintiff.

Lawrence B. Goodwin, Esquire; Stefan R. Stoyanov, Esquire; Peter J. Toren, Esquire; Charlotte Pontillo, Esquire; and Steven D. Chin, Esquire of KASOWITZ, BENSON, TORRES & FRIEDMAN LLP, New York, New York.
Jack B. Blumenfeld, Esquire and Julia Heaney, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware.

Attorneys for Defendant.

---

**MEMORANDUM OPINION**

October 30, 2009
Wilmington, Delaware

*Joseph Farnan*
Farnan, District Judge.

    Presently before the Court is Defendant WebXchange Inc.'s Motion To Dismiss Microsoft's Complaint For Lack Of Subject Matter Jurisdiction. (D.I. 9.) For the reasons discussed, Defendant's Motion will be granted.

**I. Background**

    On July 2, 2009, Microsoft Corporation ("Microsoft") filed a declaratory-judgment complaint against WebXchange Inc. ("WebXchange") in connection with three patents over which WebXchange claims ownership (the "patents-in-suit"). (D.I. 1, at ¶5.) The patents-in-suit are "generally directed to methods and systems for enabling transactions on a web or other networks." (D.I. 10, at 4.) Microsoft seeks a declaration that Microsoft's actions in connection with Microsoft MapPoint Web Services ("MapPoint") and Microsoft Virtual Earth Web Services ("Virtual Earth") do not infringe any claim of the patents-in-suit, and further, that the patents-in-suit are invalid and unenforceable. (D.I. 12, at 2.)

    The background of the present action began well before July 2009. On March 5, 2008, WebXchange Inc. ("WebXchange") instituted three patent infringement actions against Defendants Allstate Insurance Company, et al., Dell, Inc., and FedEx Corporation, et al. in the United States District Court for the

1

District of Delaware (the "Related Cases").¹  The patents-in-suit asserted by WebXchange in the Related Cases are the same patents-in-suit as in this action. (D.I. 10, at 4.)  Defendants in the Related Cases used Microsoft's Visual Studio software to create some of the products WebXchange has accused of infringement. (Id.)²  At least one of these defendants now seeks indemnification and defense from Microsoft. (D.I. 1, at ¶¶7-9.)

On November 12, 2008, Microsoft filed a declaratory judgment action against WebXchange in the United States District Court for the Northern District of California (the "California action").  (D.I. 10, at 5.)  Microsoft sought a declaration that: 1) the patents-in-suit were not infringed by Microsoft's licensing of its Visual Studio software, or by its customers' use of Virtual Studio to create Web Services; and 2) the patents-in-suit were invalid and unenforceable. (D.I. 12, at 7-8.) WebXchange moved for dismissal, arguing that the court lacked subject matter jurisdiction because there was no actual case or controversy between the parties.  (D.I. 11, Toren Decl., Ex. B.)

---

¹ WebXchange Inc. v. Allstate Ins. Co. et al., C.A. No. 08-131-JJF; WebXchange Inc. v. Dell Inc., C.A. No. 08-132-JJF; WebXchange Inc. v. FedEx Corp. et al., C.A. No. 08-133-JJF.

² Microsoft's Visual Studio software contains a tool kit for developing Web Services products, including MapPoint and Virtual Earth Web.  (D.I. 12, at 4-5.)  Virtual Studio has never been accused of infringement by WebXchange (D.I. 10, at 4).  Microsoft does not seek relief regarding Virtual Studio in the present action. (D.I. 12, at 4.)

2

The Honorable William H. Alsup granted that motion with leave to file an amended complaint, and advised Microsoft to "plead its best case." (Id. at Ex. F.) Microsoft sought leave to file an amended complaint, but voluntarily withdrew its motion five days after WebXchange filed its Opposition. (D.I. 10, at 5-6.)

Microsoft initiated the present action in this Court approximately four months later. WebXchange filed its Motion to Dismiss for Lack of Subject Matter Jurisdiction on August 26, 2009. (D.I. 9.)

## II. Parties' Contentions

By its Motion, WebXchange contends the present action should be dismissed for lack of subject matter jurisdiction, or alternatively, should be transferred to the Northern District of California. WebXchange contends that no actual case or controversy exists, and accordingly, that the Court lacks subject-matter jurisdiction. (D.I. 10, at 1-2.) WebXchange contends that Microsoft has not suffered any actual injury because WebXchange has not accused Microsoft or its MapPoint or Virtual Earth products of infringement. (Id. at 17.) Further, it contends that Microsoft's alleged indemnification obligations do not amount to an actual case or controversy. (Id. at 18.) WebXchange also contends that Microsoft is under no imminent threat of injury because enforcing patent rights against third parties does not create a controversy, and because WebXchange is

3

under no obligation to covenant not to sue Microsoft. (D.I. 17, at 12.)

Microsoft responds that an actual case or controversy exists between the parties, and accordingly, the Court has subject-matter jurisdiction over the present declaratory judgment action. (D.I. 12, at 1.)  Its contention that an actual case or controversy exists is based on two primary arguments.  First, Microsoft contends it has been injured by WebXchange in the Related Cases because WebXchange has attempted to enforce the patents-in-suit against Microsoft's customers, and because WebXchange allegedly claims that the use of MapPoint infringes the patents-in-suit.  (Id. at 10-11.)  Second, Microsoft contends that it faces a "palpable threat" that WebXchange will sue Microsoft or other Microsoft customers.  (Id. at 14).  Specifically, Microsoft asserts that such a threat can be inferred from WebXchange's conduct in three ways: 1) WebXchange's failure to state that the patents-in-suit are not infringed by use of MapPoint or Virtual Earth; 2) its failure to covenant not to sue Microsoft or its customers for use of MapPoint or Virtual Earth; and 3) its willingness to resort to litigation to enforce the patents-in-suit, even without prior notice. (Id. at 10-11.)

Additionally, WebXchange contends that the present action is barred by collateral estoppel because identical questions concerning the issue of subject-matter jurisdiction have already

been litigated in the California action. (D.I. 10, at 6-7.) Microsoft responds that collateral estoppel does not apply because the California action did not litigate the identical jurisdictional issue presented here. (D.I. 12, at 17.)

WebXchange alternatively contends that the Northern District of California is the proper forum, and requests that the present action be transferred. Given the California Court's familiarity with the action, WebXchange argues that a transfer is proper under § 28 U.S.C. 1404(a). Moreover, WebXchange contends the California Court should be allowed to judge the appropriateness of Microsoft's actions in light of that Court's previous order. (D.I. 17, at 2.) Microsoft denies that it has engaged in improper forum shopping, and opposes any transfer unless this Court stays the Related Cases. (D.I. 12, at 20.)

### III. Legal Standard

The Declaratory Judgement Act does not create a basis for federal jurisdiction. Rather, jurisdiction must be established in accordance with Article III, Section 2 of the Constitution, which requires that an actual controversy exist between the parties before a court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a); see MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 126-27 (2007)(citations omitted)(noting that the phrase "case of actual controversy" in the Declaratory Judgment Act

5

refers to the types of cases which are justiciable under Article III's case and controversy requirement).  The basic question a court must determine is "whether the facts alleged, under all the circumstances, show that there is substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  MedImmune, 549 U.S. at 127 (citations omitted).  Specifically, subject matter jurisdiction over a declaratory judgment suit requires that "the dispute be 'definite and concrete, touching the legal relations of the parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of conclusive character.'"  Id. (citing Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937)).

There are no bright line rules for determining when a declaratory judgment action meets the jurisdictional prerequisites.  Id.  Rather, in exercising its discretion, a court should consider the following non-exclusive factors: 1) whether declaratory relief would clarify and settle the legal relations in issue; 2) the convenience of the parties; 3) the public interest in a settlement of the uncertainty of the obligation; 4) the unavailability and relative convenience of other remedies; and 5) whether the Declaratory Judgment Act is being used for "procedural fencing," "forum shopping," or as a

6

means to provide another forum in a "race" for res judicata. Terra Nova Ins. Co. Ltd. v. 900 Bar, Inc., 887 F.2d 1213, 1224-25 (3d Cir. 1989)(internal citations omitted). Plaintiff bears the burden of establishing an actual controversy by a preponderance of the evidence. Shell Oil Co. v. Amoco Corp., 970 F.2d 885, 887 (Fed. Cir. 1992). Even if the jurisdictional prerequisites for subject-matter jurisdiction are satisfied, the court retains discretion whether and when to exercise jurisdiction under the Declaratory Judgment Act. Wilton v. Seven Falls, Co., 515 U.S. 277, 286-87 (1995).

**IV. Discussion**

In the Court's view, none of the "controversies" between the parties cited by Microsoft are sufficient to confer subject-matter jurisdiction, and accordingly, the case will be dismissed.[3] First, no controversy exists based on WebXchange's alleged accusations that Microsoft customers' use of MapPoint and Virtual Earth constitutes infringement of the patents-in-suit. Microsoft does not allege even one instance of WebXchange accusing infringement based on the use of Virtual Earth. (See

---

[3] Because the Court concludes that it lacks subject matter jurisdiction, it need not address WebXchange's alternative request to transfer to the Northern District of California. See Moravian Sch. Advisory Bd. of St. Thomas, V.I. v. Rawlins, 70 F.3d 270, 376 (3d Cir. 1995) ("lack of subject matter jurisdiction terminates a case originally filed in federal court"); see also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action.").

7

D.I. 12, at 6-7 (listing instances in which WebXchange allegedly asserted that use of MapPoint infringed the patent-in-suit).) In fact, Microsoft's only basis for contenting that WebXchange made an assertion about the use of Virtual Earth is that Virtual Earth and MapPoint share the same functionality. (Id. at 12.) Microsoft cites excerpts from discovery documents in WebXchange v. FedEx Corp., et al., No 08-133-JJF, in an effort to prove that WebXchange accused FedEx of infringement based on FedEx's use of MapPoint. However, after careful review, the Court finds that those documents demonstrate that WebXchange accused infringement against a larger FedEx system, of which FedEx's use of MapPoint is just one part. (See D.I. 13, Ex. 3 ("FedEx infringes the patents-in-suit by, at least, making and using, inducing or contributing to another's use of: File, Print...Kinko's("FPK"); File, Print, FedEx, Kinko's ("FPFK"); systems that allow a customer to connect to FedEx's computer systems via Web services or the Simple Object Access Protocol; FedEx's Web services, including FedEx's pricing Web service; FedEx's use of Microsoft MapPoint Web Services; FedEx's shipping Web services; FedEx's payment, credit card, and pricing Web services; FedEx's job ticket Web services . . .").)

    Next, the Court concludes that no controversy exists by virtue of WebXchange's infringement suits against Microsoft customers who use MapPoint. As Microsoft contends, in some

instances, subject matter jurisdiction can be based on a declaratory judgment defendant's lawsuits against a declaratory judgment plaintiff's customers.  See <u>WS Packaging Group, Inc. v. Global Commerce Group, LLC</u>, 505 F. Supp. 2d 561, 565-66 (E.D. Wis. 2007)("the record indicates that WS faces at least imminent personal injury from Global's threats against WS's customers").  However, the present action is distinguishable for several reasons.  There is no indication that WebXchange is intentionally engaging in scare-the-customer tactics, or using Microsoft's customers as proxies to apply pressure to Microsoft.  <u>Contra</u> <u>id.</u>  Even if any of the Related Cases defendants are ultimately found to have infringed WebXchange's patents-in-suit, that does not necessitate a finding that Microsoft itself infringed by its MapPoint and Virtual Earth programs.  See <u>Fujitsu Ltd. v. Nanya Tech. Corp.</u>, No. C 06-6613 CW, 2008 U.S. Dist. LEXIS 63830, at *10-11 (N.D. Cal. Aug 12, 2008)(distinguishing cases where a declaratory judgment defendant's lawsuits against declaratory judgment plaintiff's customers were found to create a controversy between the parties).  Conversely, a declaration that MapPoint and Virtual Earth do not infringe the patents-in-suit will not prevent WebXchange from suing other Microsoft customers for infringement based on their use of MapPoint and Virtual Earth.  See <u>id.</u> at *11.

Further, the Court concludes that the alleged damage caused

by the Related Cases to Microsoft's relations with its customers, (D.I. 12, at 3), does not create a controversy between the parties. In the California action, Microsoft claimed that thousands of customers used Microsoft software just as the Related Cases defendants did. (See D.I. 11, Toren Decl., Ex. E, Mot. Hr'g Tr. 8:14-17, Feb. 12, 2009.) To date, WebXchange has only accused 3 of those customers of infringement, which in the Court's view, is insufficient to prove WebXchange is causing actual injury to Microsoft's business relationships. See Fujitsu Ltd. at *11 (finding no controversy in part because declaratory judgment defendant's infringement suits against declaratory judgment plaintiff's customers did not threaten a significant portion of plaintiff's business).

Finally, in the Court's view, WebXchange's conduct has not created an imminent future threat to Microsoft, and accordingly, the Court concludes that no controversy exists on this basis. A patentee's refusal to covenant not to sue to enforce its patent is relevant to the determination of subject matter jurisdiction, but is not dispositive. Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d 1329, 1341 (Fed. Cir. 2008)(citing BP Chem. v. Union Carbide Corp., 4 F.3d 975, 980 (Fed. Cir. 1993)). In light of the circumstances discussed above, WebXchange's failure to covenant not to sue Microsoft does not create an actual controversy by itself. "A patentee has no obligation to spend the time and

money to test a competitors' product nor to make a definitive determination, at the time and place of the competitors' choosing, that it will never bring an infringement suit." Id.

### V. Conclusion

For the reasons discussed, the Court concludes that there is no controversy between the parties sufficient to confer subject matter jurisdiction.  Accordingly, Defendants' Motion will be granted.

An appropriate order will be entered.